UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID HOWARD, DUSTIN EVANS, and DAMON FLOWERS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Case No. 1:20-cv-00352-TWP-MPB ) |
| BRANDON MILLER, AMANDA COPELAND, and ARAMARK CORPORATION, [1] | ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Brandon Miller ("Miller"), Amanda Copeland ("Copeland"), and their employer, Aramark Correctional Services, LLC ("Aramark") (collectively, "Defendants"). (Dkt. 45.) Plaintiffs David Howard ("Howard"), Dustin Evans and Damon Flowers (collectively, "Plaintiffs") are prisoners confined to the Indiana Department of Correction ("IDOC").  They bring this lawsuit asserting that Defendants implemented a practice at Pendleton Correctional Facility ("Pendleton") where prisoners were each given a reusable plastic cup and spork to be used at all meals, instead of receiving new utensils at each meal and they were not given adequate supplies to sanitize these items between meals, which resulted in Plaintiffs becoming ill. Plaintiff Howard has also individually submitted several motions and notices to the Court  (Dkts. 55, 57, 58, 60-68, 70).  For the reasons explained below, the Motion for Summary Judgment is **granted** and Howards individual motions are **denied**.

---

[1] The **Clerk is directed** to change Aramark's name on the docket from "Aramark Corporation" to "Aramark Correctional Services, LLC".  (*See generally* Dkt. 47.)

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Federal Rule of Civil Procedure 56(a).  Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events.  *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir.

2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. FACTUAL BACKGROUND

Plaintiffs' claims arise from a change in food-service practices implemented at Pendleton in June 2019. Aramark was, and still is, a private entity that contracted to provide food service to inmates at IDOC facilities, including Pendleton. (Dkt. 46-1 at ¶ 5.) Copeland is Aramark's Vice President of Operations. *Id.* at ¶ 2. In 2019, she was an Aramark District Manager. Her district included Pendleton. *Id.* at ¶ 3. Miller was and is employed by Aramark as Pendleton's Food Services Director. (Dkt. 46-2 at ¶ 2.)

In addition to preparing and serving food, Aramark contracted to "maintain[] a sanitary food service area." (Dkt. 46-1 at ¶ 5.) The status quo before June 2019 is not entirely clear based on the parties' submissions. However, the Court infers for purposes of summary judgment that inmates arrived at the dining hall for their meals and received dishes and utensils that they returned at the end of the meal. The Court also infers that Aramark personnel then collected, washed, and stored dishes and utensils until the next meal.

Beginning in June 2019, inmates in the general population were issued two reusable cups and one reusable spork. *Id.* at ¶ 11. Inmates in restricted housing were issued one cup and one spork. *Id.* Inmates' names and identification numbers were engraved on their items. *Id.* Inmates were required to bring their cups and sporks to the dining hall for each meal. *Id.* Between meals, inmates were responsible for sanitizing and storing their own cups and sporks. *Id.* at ¶ 13.

When this change was implemented, Plaintiffs did not have access to hot water and soap to clean their cups and sporks. The water in their cells was cold. (Dkt. 53 at 11-14, 69-70.) They also did not have access to hot water in a common area, such as a bathroom or washing station. *Id.* They sometimes had access to soap, but not always. *Id.* Plaintiffs also did not have anything to store or carry their cups and sporks in while traveling to and from meals. *Id.* Plaintiffs believe they became sick multiple times because they could not keep their cups and sporks clean. *Id.*

The origins of the new program are in dispute. Miller states that the IDOC "instructed" him "to implement a re-usable cup and spork practice at" Pendleton. (Dkt. 46-2 at ¶ 4.)[2] Plaintiffs each state that they overheard Miller tell an inmate that Aramark initiated the "re-usable cup and spork practice" and the IDOC approved it at Aramark's request. (Dkt. 53 at 12, 14, 70.)

Plaintiffs have provided affidavits from 23 other inmates attesting that they do not have access to resources necessary to sanitize their cups and sporks. (Dkt. 53 at 1-14; 31-70.) Four of those inmates also affirm Plaintiffs' statement that Miller told an inmate that Aramark initiated the cup-and-spork program. *Id.*

Before going to work for Aramark, Copeland worked for ten years for the IDOC, eventually rising to the position of Chief of Staff/Deputy Commissioner of Administration. (Dkt. 46-1 at ¶ 4.) She understood standing operating procedures to require that all inmates be provided

---

[2] Miller's declaration contains two paragraphs that are each labeled as "paragraph four". (*See* Dkt. 46-2.) This statement is contained in the second "paragraph four".

4

with soap and hygiene products, even if they could not afford to purchase those items themselves. *Id.* at ¶ 9. Additionally, based on her experience, she believed that "inmate housing quarters at all prisons . . . had access to hot water." *Id.* at ¶ 10. Miller personally used sinks in the kitchen and restrooms at Pendleton as part of his employment. (Dkt. 46-2 at ¶ 5.) In his experience, the faucets always produced hot water and were stocked with soap. *Id.*

### III. DISCUSSION

Plaintiffs contend that Defendants were deliberately indifferent to unsanitary conditions by forcing them to repeatedly use contaminated cups and sporks, which caused them to fall ill multiple times while housed at Pendleton. Defendants argue that they are entitled to summary judgment because the decision to implement this practice was made by IDOC; they had no authority to provide the prisoners with cleaning supplies; they were not authorized to clean and sanitize areas of the facility beyond the food service area and dining hall; and they were not made aware of unsanitary conditions or incidents of inmate illness as a result of the practice. The Court addresses Defendants' relevant arguments below.

#### A. Copeland and Miller

Conditions of confinement violate the Eighth Amendment when (1) the conditions subject the plaintiff to the denial of the minimal civilized measure of life's necessities, and (2) the defendants are "deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The Seventh Circuit has "identified several situations that" satisfy the first prong of the test, "including lack of heat, clothing, or sanitation." *Id.* (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (confining inmate in cells covered in massive amounts of feces and flooded with sewage obviously denied minimal

5

civilized measures of life's necessities.).  The second prong—deliberate indifference—requires a showing that the defendant "knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).  "[I]t is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Id.*  "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official *actually drew the inference*." *Id.* (emphasis added).

The Court assumes for purposes of summary judgment that Copeland and Miller were both involved in and responsible for implementing the spork and cup program.  The Court also assumes that the spork and cup program ultimately exposed inmates to a substantial risk of serious harm because they lacked access to the resources necessary to safely clean and store their sporks and cups between uses.

Even so, no evidence in the record shows that Copeland or Miller knew inmates would be unable to clean their sporks and cups and store them safely between uses.  Both provided declarations that, in their experience, hot water runs through the prison's sinks and that they understood inmates were provided with sufficient soap.  Plaintiffs have provided extensive evidence suggesting that is not actually the case; specifically, they report that they lack access to the common areas where staff members wash their hands, the water in their cells is cold, and access to soap is inconsistent.  But Plaintiffs provide no evidence that Copeland or Miller *knew* of Plaintiffs' situation.  And, even if it seems reasonable to infer that prisoners might not have constant access to hot water and soap, there is no evidence that Defendants *drew* that inference. *See Townsend*, 522 F.3d at 773.  Accordingly, because there is no evidence in the record to establish

the second prong of the deliberate indifference test, Defendants Copeland and Miller are entitled to summary judgment in their favor.

**B.**     **Aramark**

Although a private entity, Aramark acts under color of state law and therefore may be liable for violating Plaintiffs' Eighth Amendment rights under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019). "Prevailing on such a claim requires evidence that a[n Aramark] policy, practice, or custom caused" the constitutional violation. *Id.* "[A] plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). "Inaction, too, can give rise to liability in some instances if it reflects 'a conscious decision not to take action.'" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017)).

Even if the Court assumes that Aramark—and not solely the IDOC—is responsible for imposing the spork-and-cup program, Plaintiffs' claim would still fail. The claim against Aramark can be viewed as Aramark taking an unconstitutional action by implementing a policy that exposed inmates to a substantial risk, or as Aramark committing an unconstitutional inaction by implementing the spork-and-cup program without ensuring that inmates could adequately sanitize and store their sporks and cups. *See LaPorta*, 988 F.3d at 986; *Dean*, 18 F.4th at 235.

The first theory fails because, again, there is no evidence that any Aramark policymaker knew inmates would have difficulty sanitizing or storing sporks or cups. The second theory fails

7

because there is no evidence that Aramark questioned inmates' access to hot water or soap before implementing the spork and cup program but deliberately chose not to look into those suspicions. Common sense would seem to have notified Aramark's actors that inmates who reuse dirty sporks and cups face a substantial risk of serious harm.  But nothing in the record indicates that any Aramark decision-maker knew that inmates would be unable to clean their sporks and cup or remained willfully ignorant of that possibility.

In addition, the record does not support an inference that the spork and cup program is the "moving force" behind the constitutional violation that Plaintiffs allege. *LaPorta*, 988 F.3d at 987. The Constitution does not entitle prisoners to multiple sets of dishes and utensils, or to receive clean dishes and utensils upon arrival to the dining hall.  It entitles them to the minimal civilized measure of life's necessities.  *Gray*, 826 F.3d at 1005.  Requiring inmates to keep, clean, and reuse their own dishes and utensils does not, by itself, violate this standard.  If the spork and cup program is problematic, it is problematic because Plaintiffs lack access to hot water and soap.  (*See* Dkt. 53 at 11-14, 69-70.)  Soap and clean, hot water are necessary for everyday hygienic and sanitary tasks including and beyond cleaning sporks and cups.  Plaintiffs' inability to access these resources—not their restriction to reusable dishes and utensils—appears to be the force behind any inhumane conditions of confinement.  And Plaintiffs do not dispute Defendants' assertion that Aramark has no control over their access to soap and clean, hot water in their cells or in housing units. (Dkt. 46-1 at ¶ 6.)  Accordingly, no Eighth Amendment violation is attributable to Aramark.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, Dkt. [45], is **GRANTED**.  Plaintiff Howard has also individually submitted several motions and notices to the Court (Dkts. 55, 57, 58, 60-68, 70).  The motions and notices raise various issues related to

Howard's conditions of confinement, including medical care, water quality and retaliation. *Id.* The issues are unrelated to the claims brought by Plaintiffs in their underlying Complaint and thus not properly raised in this case. Accordingly, Howard's miscellaneous motions, Dkts. [60], [61], [62], [63], [64], [65], [70], are **DENIED**. The **Clerk is directed** to send Howard a blank civil rights complaint form to be used if he wishes to pursue those allegations in a new case. This action is **dismissed with prejudice**. The **Clerk is directed to enter final judgment**.

    SO ORDERED.

Date: 3/2/2022

                                                   Hon. Tanya Walton Pratt, Chief Judge
                                                   United States District Court
                                                   Southern District of Indiana

DISTRIBUTION:

David Howard, #936576
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Dustin Evans, #211424
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Damon Flowers, #164760
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com